CASE 94—ACTION BY THE COVINGTON PERPETUAL BUILDING AND LOAN
ASSOCIATION, OF COVINGTON, KY., AGAINST THEODORE KLEIMEIR,
&C., TO RECOVER A BALANCE DUE ON A LOAN AND TO ENFORCE A
MORTGAGE LIEN THEREFOR.—FEB. 20, 1902.

(Omitted in former reports.)

# Kleimeir, &c. v. Covington Perpetual Build-ing and Loan Association.

APPEAL FROM KENTON CIRCUIT COURT—JAMES P. TARVIN, CIRCUIT
JUDGE.

JUDGMENT FOR PLAINTIFF. DEFENDANTS APPEAL. REVERSED.

BUILDING ASSOCIATIONS—USURY—ACCOUNTING—FINES.

1. A loan was secured from a building association by the borrower
subscribing for an amount of its stock equal to the loan, and
leaving it with the company as collateral. The loan was also
secured by a mortgage, and weekly payments were made to
cover the premiums on the stock and the interest on the loan.
The loan was thereafter renewed in the same manner, and at
each renewal a certain sum was also deducted from the loan
as a premium. The association was at all times a going con-
cern. HELD, that the various subscriptions of stock and the pay-
ments of premiums thereon at the time of the renewals were
a mere pretext for usurious interest.

2. Where a loan made with the building and loan association was,
usurious, on final settlement the borrower should be credited
with all the payments from the inception of the loan, whether
made as premiums or interest, as payments on an ordinary 6
per cent. loan.

3. Fines for non-payment of premiums accruing after the borrower
has ceased to make payments can not be collected, as such
cessation constitutes a termination of the borrower's connection
with the building association as a stockholder.

4. A borrower from a building association under a usurious con-
tract, when credited with premiums or interest paid as on an
ordinary 6 per cent. loan, is not entitled to any credit for div-
idends on the stock.

5. Where a defendant pleads usury in an action to foreclose, and
sets up that the transaction began in 1889, but the evidence

shows that it commenced in 1886, he is entitled to amend his answer in accordance with the facts.

. W. M. FENLEY, ATTORNEY FOR APPELLANT.

### POINTS AND AUTHORITIES. ·

1. Right to amend answer.  Civil Code, section 134.

2. Partial payments.  Sub-sec. 3 of sec. 2219, Kentucky Statutes; Riddle, &c. v. Lewis, 7th Bush, 197; Dowell v. Safety Bldg. and Loan Ass'n Co., Ky. Law Rep., vol. 21, page 1267, and cases cited; Safety Bldg. and Loan Co. v. Eckler, 20th Ky. Law Rep., page 1770.

3. Liability of stockholders for expenses.  Nat'l Bldg. & Loan Ass'n v. Bybee, &c., 21 Ky. Law Rep., No. 13, page 1021; The Safety Bldg. & Loan Ass'n Co. v. Montjoy, 21 Ky. Law Rep., No. 15, page 1189; U. S. Building & Loan Ass'n's Assignee v. Same, 21 Ky. Law Rep., No. 23, page 1763; Dowell, &c. v. Safety Bldg. & Loan Co., 21 Ky. Law Rep., No. 16, page 1267.

ROBT. C. SIMMONS, ATTORNEY FOR APPELLEE.

1. The court did not err in refusing the filing of the amended answer offered September, 1900.

2. The court properly denied appellant the right to claim dividends on his payments and interest thereon.  Williams, &c. v. Nat. Bldg. & Loan Ass'n, 22 R., 962; U. S. Bldg. & Loan Association's Assignee v. Rowland, 22 R., 1423; Safety Bldg. & Loan Association v. Eckler, 20 R., 1770.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

This suit was instituted by the appellee, the Covington Perpetual Building & Loan Association, of Covington, Ky., against the appellants, Theodore Kleimeir and Bernidena Kleimeir, to recover a balance of $1,996.40, alleged to be due upon a loan of $2,500, created on the 24th day of September, 1896, and secured by a mortgage upon certain real estate. It is charged in the petition that appellants promised and agreed to repay this loan in equal installments of $5.00 per week, with interest thereon in equal installments of $3.00 each, payable on Thursday of each and every week, and that

the mortgage made to secure the payments of the loan pro-
vided that, if the defendants should fail for ninety. days after
the maturity of any one of said installments of principal or
interest to pay the same, the whole of said debt should be-
come due and payable. It is alleged that they had been re-
paid $570.62, leaving due a balance of $1,929.38, in addition
to $6.50 fines imposed for failure to pay for 13 weeks at 50
cents per week, and also the sum of $21.52, interest to date,
aggregating in all $1,996.40, for which judgment was prayed.
The mortgage to secure the payment of this debt, which is
filed as an exhibit with the petition, recites that the defend-
ant, Kleimeir, is a member of the plaintiff's association, and
had received for its advance of $2,500 five shares of stock of
the corporation. The defendant in his answer says that the
claim of the plaintiff against him for $1,996.40 is largely
made up of usury, and that the obligation sued on is the re-
newal of one dated on the 24th of January, 1889; that at
that date the plaintiff retained out of the loan, under the
pretense of collecting premiums, etc., $98.76, and that on
September 17, 1896, they retained $77 for premiums, etc.;
that they had failed to credit his obligation with weekly pay-
ments at the date thereof; and asked that the cause be re-
ferred to the master commissioner, with instruction to purge
the debt of usury, and to ascertain the exact balance due.
The master commissioner reported a balance due plaintiff
as of January, 1900, of $1,836.11.

It was disclosed by the evidence taken by the commissioner
that the original loan began on March 10, 1886, instead of
the 26th of February, 1889. Thereupon the defendant ten-
dered and offered to file an amended answer setting up this
fact, and seeking to have extracted from the debt all usury
embraced therein from that date, and that the entire sums
paid by him, interest and premiums, should be applied to the

extinguishment of the principal of his debt and 6 per cent. interest thereon, alleging that the transactions of March, 1889 and 1896, were mere renewals of his original obligation, and that plaintiff was a "going concern." This motion was overruled, and judgment rendered in accordance with the commissioner's report.

The transactions between the plaintiff and the defendant, as disclosed by the evidence of the officers of the plaintiff association, are substantially as follows:  On the 10th day of March, 1886, the defendant Kleimeir applied to the plaintiff association for a loan of $3,500, to enable him to complete the erection of a building in the city of Covington, and the plaintiff agreed to make the loan upon the condition that he would subscribe for seven shares of its capital stock, of the par value of $500, and would assign the stock to the association as collateral security, and would in addition thereto execute a mortgage upon certain real estate in the city of Covington, and that he would repay the money so borrowed in weekly installments of $11.20, which covered the interest and premium. At the date of the original transaction, in 1886, the plaintiff deducted $77 by way of premium, and advanced $3,000 in cash, including the $77 so deducted. Some eight months thereafter, as the building progressed toward completion, they paid the defendant the remaining $500. In accordance with his contract, defendant paid upon this loan $11.20 per week, until the 24th of January, 1889. The aggregate amount of these payments is not shown by the commissioner's report, but on that day the company credited him therewith, and loaned him the aditional sum of $1,091.-98, and took therefor a new obligation of $3,500, and a new mortgage to secure the same upon the same property, and a new certificate of stock for seven shares in what was known as "Class B" of the association was issued, at the same time

canceling the original obligation and original mortgage. By
the terms of the mortgage and note, which was taken on the
24th of January, 1889, the defendant was to pay $7.70 per
week in interest and premiums, and this amount was paid
until the 17th day of September, 1896. On that day the
company, after crediting him with the amounts paid in ac-
cordance with the terms of the contract, loaned him the addi-
tional sum of $713.51, deducting therefrom $55.25 in the way
of premiums, and took his note for the obligation sued on.
at the same time issuing a new certificate for five shares of
the stock of the company. At the date of this renewal the
old note and mortgage made to secure it and the certificate
for seven shares of stock were canceled. From this time on
the appellant paid $8 per week in premium and interest, un-
til the institution of this suit.

It is insisted upon this appeal that the judgment should be
reversed because of the refusal of the circuit judge to allow
the amended petition, setting up the date of the original
transaction, and because various payments made by the ap-
pellant were not credited at the date thereof, and it is also
insisted that he is entitled to a credit for the semi-annual
dividends declared by the company upon the stock. Ques-
tions similar to those involved in this case have been fre-
quently considered by this court in the last few years, and
the rule announced that the borrower in a "going concern"
of this character is only chargeable with his loan and legal
interest and fines, unless the latter are excessive and oppres-
sive, and should be credited with all payments, whether
made as dues, premiums, or interest, upon the theory that
it is estimated that the member's stock is worth at least
what he paid for it, and whatever it may be worth is for-
feited to the company for expenses. See Loan Co. v. Ecklar
(20 R., 1770), 50 S. W. 50, and Reddick v. United States

Building & Loan Ass'n's Assignee (20 R., 1720), 49 S. W. 1075. And subsection 3 of section 2219 of the statutes provides that "a partial payment of a debt bearing interest shall be first applied to the extinguishment of the interest then due." This section of the statutes was construed by this court in Riddle v. Lewis, 70 Ky. 193. The court said: "The several payments should be so applied at their date first to discharge that interest which has already accrued, and, of course, when the legal interest is discharged, the balance of the partial payment must be applied as a credit upon the principal as of the date of the payment." It is clear that, when we strip this transaction of the various devices resorted to by the plaintiff to collect from the defendant sums in excess of 6 per cent. interest, it is an ordinary case of borrowing by the defendant and lending by the plaintiff. He was never a bona fide stockholder in the company, and it was never intended that he should become so. The stock subscription was a requirement of the appellant company to afford a pretext for exacting usurious interest, and the various renewals, accompanied with the execution of new notes and mortgages, etc., were manifestly for the same purpose. As a matter of fact, the transaction beginning March 11, 1886, and culminating in this litigation, was one transaction. We are therefore of the opinion that the appellant is entitled to have all the payments made by him applied first to the extinguishment of the interest, and then the principal at the date thereof, and that all charged against him by the company in excess of 6 per cent. interest should be disallowed; for, while there have been some intimations in former opinions of this court that reasonable fines might be collected as running expenses, it was held in the Ecklar case, quoted above, that the date at which a borrower quit paying should be the starting point for a new principal, on which

interest only is to be computed or added thereafter, without further charge or expense, failure to pay being regarded as the termination of the borrower's connection with the company as a stockholder, and he should thereafter obtain no benefit and shoulder no burdens or fines. The appellant's fines all accrued after he had ceased to pay, and after his debt to the company had matured under the terms of the contract. It necessarily follows from the foregoing views that the appellant is not entitled to the benefit of any dividends which may have been declared by the company upon its capital stock, as he is not entitled to have the money paid by him to the company applied both to the extinguishment of his debt and treated at the same time as a payment upon his stock to the company. See Williams v. Association (22 R., 962), 59 S. W. 321. The circuit judge erred in refusing to allow the amended answer of September 14th to be filed, as it does not substantially change the defense relied on in the original answer, but only makes the pleadings conform to the proof as given by the officers of the appellee company.

For reasons indicated, the judgment is reversed, and cause remanded for proceedings not inconsistent with this opinion.